**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

ANTHONY M. PETERSON,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

No. C14-4110-LTS

**MEMORANDUM
OPINION AND ORDER**

_____

Plaintiff Anthony M. Peterson seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying his applications for Social Security Disability benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Peterson contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant time period. For the reasons that follow, the Commissioner's decision will be reversed and remanded.

## I. BACKGROUND

Peterson was born in 1964 and has a high school education. AR 321, 371. He has past relevant work as a shag driver, machine operator, warehouse worker, grain handler and manual laborer. AR 159. Peterson applied for DIB and SSI on February 2012, alleging disability since July 12, 2011, due to a back injury and depression. AR 321, 371.

Peterson's applications were denied initially and on reconsideration. AR 260, 270, 276. He then requested a hearing before an Administrative Law Judge (ALJ). AR

281. ALJ Hallie E. Larsen conducted a hearing on June 19, 2013, during which Peterson, his wife and a vocational expert (VE) testified. AR 167-68. On August 5, 2013, the ALJ issued a decision in which she found that Peterson was not disabled. AR 144-61. The Appeals Council denied Peterson's request for review on September 29, 2014. AR 1. The ALJ's decision thus became the final decision of the Commissioner. AR 1; 20 C.F.R. §§ 404.981, 416.1481.

Peterson filed a complaint (Doc. No. 1) in this Court on November 25, 2014, seeking review of the Commissioner's decision. The parties have briefed the issues and the matter is now fully submitted.[1]

## II.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), *accord* 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when, due to his physical or mental impairments, the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices or other

---

[1] This case was initially assigned to United States Senior Judge Donald E. O'Brien. The case was then reassigned to United States District Judge Mark W. Bennett. Upon my appointment as a United States District Judge, the case was reassigned to me.

factors, the ALJ will still find the claimant not disabled. 20 C.F.R. §§ 404.1566(c)(1)-(8), 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. §§ 404.1572(a), 404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; see 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a

minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant cannot do his past relevant work then he is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to it do it. *Id.* § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing the evidence the Commissioner will use to determine claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id.* If a claimant

retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At step five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id.* §§ 404.145(a)(3), 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps the ALJ has determined the claimant is disabled but there is medical evidence of substance use disorders, the ALJ must decide if that substance use is a contributing factor material to the determination of disability. 42 U.S.C. §§ 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. §§ 404.1535, 416.935.

## III.    THE ALJ'S FINDINGS

The ALJ made the following findings:

(1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

(2)    The claimant has not engaged in substantial gainful activity since July 12, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3)    The claimant has the following severe impairments: right shoulder degenerative joint disease, status post-surgery; degenerative spondylosis, lumbar spine, status post fusion; major depressive disorder with psychosis (20 C.F.R. 404.1520(c) and 416.920(c)).

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: the claimant can lift up to ten pounds frequently and 20 pounds occasionally; can sit about six hours and stand or walk two hours in a normal eight hour day with normal breaks.  However, he requires the opportunity to alternate positions every 30 minutes, after which he can remain on the job and in the next fixed position for a few minutes up to 30 minutes.  The claimant should never climb ladders, ropes or scaffolds and occasionally climb stairs and ramps, balance, stoop, kneel, crouch and crawl.  The claimant is limited to occasionally reaching overhead with the right upper extremity; and should avoid concentrated exposure to work around hazards such as dangerous moving machinery and unprotected heights.  From the mental

6

standpoint, the claimant is limited to understanding, remembering and carrying out short, simple instructions; and is able to interact appropriately with coworkers and the general public on a brief and superficial basis.

(6)     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7)     The claimant was born on December 22, 1964 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.   (20 CFR 404.1563 and 416.963).

(8)     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10)   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11)   The claimant has not been under a disability, as defined in the Social Security Act, from July 12, 23011, through the date of this decision (20 CFR 404-1520(g) and 416.920(g)).

AR 149-60.


## IV.     *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir.

2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of

benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.    DISCUSSION

Peterson contends that the ALJ's decision should be reversed because (1) the ALJ failed to properly weigh treating and examining source opinions, (2) the ALJ failed to properly evaluate other medical evidence, (3) the RFC is not based upon substantial evidence and (4) the ALJ's credibility assessment is not supported by substantial evidence. Doc. No. 12.

### A.    The Medical Evidence

The record contains medical evidence from (a) Kimberly D. Woolhiser, M.D., (b) Jem E. Hof, M.D., (c) Sunil Bansal, M.D., (d) Thorir S. Ragnarsson, M.D., (e) Marlon Gasner, D.P.T., and (f) Christine Feltman, P.T. The record also contains assessments from various state agency consultants and various MRI and EMG studies.

#### 1.    Applicable Standards

The Social Security regulations state, in relevant part:

> *Treatment relationship*. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical

evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight</u>. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(c)(2) [emphasis added]. What this means is that a treating physician's opinion is generally given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). But that opinion will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. *Hacker*, 459 F.3d at 937.

When a treating physician's opinion is entitled to controlling weight, the ALJ must defer to the physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions. 20 C.F.R. § 404.1527(a)(2); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005). The ALJ must "always give good reasons" for the weight given to a treating physician's evaluation." 20 C.F.R § 404.1527(c)(2); *see also Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007). A treating physician's conclusion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis*, 392 F.3d at 994.

"In deciding whether a claimant is disabled, the ALJ considers medical opinions along with 'the rest of the relevant evidence' in the record." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting 20 C.F.R. § 404.1527(b)).  "Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Other relevant evidence includes medical records, observations of treating physicians and others, and an individual's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).  "Some medical evidence 'must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)).  "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a state agency medical . . . consultant." 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii).

"In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005).  An ALJ is required to consider other sources, but may discount these sources if such evidence is inconsistent with the evidence in the record.  *Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 886-87 (8th Cir. 2006); *Raney*, 396 F.3d at 1010).  The ALJ is required to explain the "weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-3p.

## 2. *Treating and Examining Source Opinions*

**Dr. Woolhiser**. Dr. Woolhiser treated Peterson at the Sioux Falls Veteran Affairs (VA) Hospital. AR 587. On November 10, 2011, Dr. Woolhiser noted that "[a]t this point, he is having quite a bit of pain with sitting, walking, standing or even lifting, so I don't feel he is able to work for quite a while." AR 650. Dr. Woolhiser reported complaints of pain by Peterson on several occasions. AR 622, 650, 774, 958. During a visit on November 13, 2011, Dr. Woolhiser noted no specific spasms on examination of lower back, found a little bit of tenderness through to palpitation on both sides of spine and observed a fairly normal gait. AR 651. On May 10, 2012, Dr. Woolhiser observed that Peterson could not sit for long and had to frequently change positions due to back pain. AR 622. On February, 10, 2012, Dr. Woolhiser noted that Peterson slowly moved from the chair to the table and back again, but Dr. Woolhiser "did not appreciate any specific spasms of the back." AR 636. After ordering an x-ray and CT scan, Dr. Woolhiser noted that the results showed Peterson's prior surgeries and lower L4-5 lumbar fusion, but "overall they looked good. You do have mild arthritis in both hips and the lower back." AR 935, 1106.

**Dr. Hof**. Dr. Hof began treating Peterson on January 27, 2012, at the VA hospital. AR 638-41. Dr. Hof opined that Peterson had lower back pain, right lateral lumbar flexion with some pulling on the left side of his back and mild discomfort focally on the lower right lumbar area. AR 640-41. Dr. Hof also reported that Peterson claimed a deep aching pain when doing forward lumbar flexion with support. AR 640. In filing out an accident or sickness form, Dr. Hof opined that Peterson had intermediate sedentary level functioning. AR 925. During multiple visits, Dr. Hof found that Peterson exhibited back pain. AR 628, 736, 916, 1036. Additionally, Dr. Hof opined that Peterson's back pain had improved or seemed to be improving following SI joint surgery. AR 1103.

**Dr. Bansal**. Dr. Bansal conducted an independent medical evaluation of Peterson on April 24, 2013. AR 1003-04. He reviewed medical records and personally

examined Peterson. AR 1003-19. Dr. Bansal found palpable lumbosacral tenderness that was greatest over the lower lumbar paraspinal musculature on the left. AR 1023. In examining Peterson's range of motion, Dr. Bansal found he had 45 degree flexion, 20 degree extension, 20 degree right lateral flexion and 20 degree left lateral flexion. AR 1023. Dr. Bansal diagnosed a permanent aggravation of lumbar degenerative disc disease at L2-L3, L3-L4 and L5-S1. AR 1024. He opined that Peterson's injury set caused chronic pain. AR 1025. Dr. Bansal also found that Peterson incurred a permanent aggravation from a July 12, 2011, injury. AR 1025. When determining permanent restrictions, Dr. Bansal explained that they are based on a combination of his medical evaluation, subjective reporting and known medical pathology. AR 1026-27. Dr. Bansal placed restrictions of no lifting greater than 25 pounds occasionally, 10 pounds frequently; no frequent bending, squatting, climbing, twisting, pushing or pulling; Peterson can sit, stand or walk as tolerated; Peterson must avoid sitting for more than 10 to 15 minutes, no standing for more than 10 minutes and no walking more than 5 to 10 minutes at a time and he must avoid multiple steps/stairs. AR 1026-27. Additionally, Dr. Bansal opined that Peterson would need ongoing pain management. AR 1027.

**Dr. Ragnarsson**. Dr. Ragnarsson saw Peterson for a surgical consult on October 12, 2011. AR 480. Based on an MRI conducted September 26, 2011, Dr. Ragnarsson opined: "There is some degenerative osteoarthritic change of the lumbar spine below and above the L4-5 fusion level but disk degeneration is relatively mild. No frank disk herniations present. No spinal canal compromise. No evidence of significant nerve root compression pathology at any level. There is some neuroforminal stenosis at the L3-4 level present but in my opinion, relatively mild. I see no major nerve root compressive pathology present on this study." AR 480. Dr. Ragnarsson also noted that Peterson was under no acute distress and that he had exquisite tenderness to just light touching of the lumbar spine, especially on the left and has a reduced range of motion. AR 482. Additionally, Dr. Ragnarsson noted Peterson's MRI revealed disc degeneration at the

L5-S1, L3-4, and L2-3 levels, but found it was relatively mild without any disk herniation and without major spinal canal compromise. AR 482. Finally, Dr. Ragnarsson found that there was some degree of neuroforminal stenosis present at the L3-4 level, but only moderate. AR 482. Ultimately, Dr. Ragnarsson opined that Peterson did not require additional surgery and recommended that he continue medical treatment. AR 483.

### 3. Other medical evidence

**Physical Therapist Gasner**. Gasner completed a functional capacity report based on an evaluation that took place May 1, 2013. AR 982-92. Gasner reported that Peterson could frequently sit and stand, meaning he could sit or stand for 2.5 to 5.5 hours during a work day. AR 984. Additionally, Gasner found that Peterson could only occasionally walk, meaning he could walk for less than 2.5 hours per day. *Id.* Gasner noted that Peterson was able to perform at the light physical demand level according to Department of Labor standards. *Id.* Gasner further estimated that Peterson could tolerate sitting and standing for only fifteen minutes at a time. AR 985. Gasner noted that Peterson complained of pain to palpation and showed poor intersegmental lumbar spring testing flexibility through the lower thoracic and entire lumbar and sacral spine region, both over the spinous and transverse process. AR 986. Gasner found Peterson's lumbar extension strength to be at a level of 3 out of 5. AR 987.

**Physical Therapist Feltman**. Feltman worked with Peterson after a referral from Dr. Woolhiser. AR 978. On January 11, 2013, Feltman wrote a report indicating that Peterson could stand for ten minutes, walk for fifteen minutes and sit for about thirty minutes. AR 1055.

### 4. State agency physicians

Peterson's records were reviewed by state agency physicians Donald Shumate, D.O., and Dennis Weis, M.D. AR 208-10, 252-54. Dr. Shumate prepared a physical

RFC report dated March 26, 2012, in which he found that Peterson was not significantly limited. AR 208-10. Dr. Shumate determined that Peterson could occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk for a total of two hours during an 8-hour workday, sit for a total of six hours in an 8-hour workday, occasionally climb ramps or stairs, never climb ladders and occasionally balance, stoop, crouch and crawl. AR 208. Dr. Weis prepared a report dated June 15, 2012, containing identical limitations. AR 252-54.

### 5. *The ALJ's reasoning*

The ALJ noted that she evaluated all opinion evidence in accordance with the applicable regulations and rulings. AR 153. She gave little weight to the opinion of Dr. Hof, finding that it was vague and that it provided little explanation as to why Peterson was restricted. AR 157. The ALJ did not state the level of weight given to Dr. Woolhiser's opinion but wrote that she found it to be vague as to the basis for the doctor's conclusions. *Id*. Similarly, the ALJ did not indicate the level of weight given to Dr. Ragnarsson's opinion but stated that it was vague and was based upon claimant's own reports that he could not work. AR 157-58. The ALJ gave little weight to the opinion of one-time treating source, Dr. Bansal. AR 158. The ALJ reasoned that Dr. Bansal's opinion appeared to be based on Peterson's own subjective reports and was not supported by the objective medical records. *Id*.

The ALJ gave some weight to the opinion of physical therapist Gasner and agreed that Peterson had some restrictions. *Id*. However, The ALJ did not elaborate as to why she did not adopt the limitations contained in Gasner's report. Additionally, the ALJ gave little weight to the opinion of physical therapist Feltman. *Id*. The ALJ found it unclear as to whether Feltman was providing her own opinion or simply reiterating Peterson's statements. *Id*. The ALJ further noted that Feltman's opinion was conclusory, with little or no indication of any specific work-related limitations that precluded

employment. *Id*. Finally, the ALJ afforded some weight to the state agency assessments, agreeing that while Peterson exhibited lumbar and lower extremity pain, his statements were only partially credible as to severity and were inconsistent with the objective findings. *Id*.

### 6.     Analysis

#### a.     Did the ALJ properly evaluate the medical opinions?

Peterson contends the ALJ improperly discounted various medical opinions by "speculating" that the physicians based portions of their opinions on Peterson's subjective complaints alone. The Commissioner argues that the ALJ's finding was a reasonable interpretation of the medical evidence.

The ALJ found that while Peterson had significant physical limitations, the medical evidence did not support a need to change positions as often as Peterson claimed. AR 156. In evaluating Dr. Woolhiser's opinion, the ALJ found that Dr. Woolhiser based her opinion on Peterson's subjective complaints of pain and that it was "vague as to the basis for her conclusion." AR 157. Additionally, the ALJ found that "[t]here were no detailed descriptions of limitations or a time period of Peterson being able to work." *Id*.

Peterson argues that the ALJ failed to point to any evidence to support her finding that Dr. Woolhiser relied on Peterson's subjective complaints. However, Peterson admits that Dr. Woolhiser did not provide any detailed limitations. Doc. No. 12 at 18. Dr. Woolhiser wrote, "[a]t this point, he is having quite a bit of pain with sitting, walking, standing, or even lifting and I don't feel he will be able to work for quite a while." AR 650. I agree with the ALJ that Dr. Woolhiser's opinion contains no testing, clinical data or other information to suggest any work-related limitations. An ALJ may discount portions of a treating source's opinion if the limitations are unsupported by treatment records and objective testing or reasoning. *See Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001); see also *Stormo*, 377 F.3d at 805-06 ("Such [treating source] opinions are

16

given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data."). Further, the ALJ was not required to hypothesize what evidence Dr. Woolhiser may have considered in forming her opinion. *See Cline*, 771 F.3d at 1104.

For these reasons, I find that the ALJ was permitted to discount Dr. Woolhiser's opinion, despite Dr. Woolhiser's status as a treating source. While it would have been helpful for the ALJ to state the precise weight actually given to Dr. Woolhiser's opinion, *see* 20 C.F.R. §§ 404.1527(c), 416.927(c), it is very clear that the ALJ did not give the opinion controlling weight. Because the ALJ provided good reasons for discounting Dr. Woolhiser's opinion, I find no error.

In evaluating Dr. Hof's opinion, the ALJ determined that "little weight" should be given to the findings that Peterson was (a) unable to work for 12 months and (b) limited to intermediate sedentary function, because the opinion offered little explanation as to why these restrictions existed. AR 157. The ALJ properly discounted the opinion that Peterson was unable to work because that issue is reserved to the Commissioner. *Ellis*, 392 F.3d at 994. Additionally, I find that the ALJ was entitled to discount the limitation of "intermediate sedentary function" as it was not supported by any explanation. An ALJ may discount a treating-source opinion if it is vague, conclusory and unsupported by medically acceptable data. *Stormo*, 377 F.3d at 805-06 (8th Cir. 2004) (citing *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996)). "The commissioner need not patch the holes in a treating physician's porous opinion nor give the opinion controlling weight under such circumstances." *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (citing 20 C.F.R. § 416.927(c)(2) and *Piepgras*, 76 F.3d at 236 ("A treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements.")). Because the limitation of "intermediate sedentary function" was supported by neither an explanation nor any medically acceptable data, the ALJ properly discounted it.

Finally, Peterson argues that the ALJ failed to give appropriate weight to Dr. Bansal's opinion. The ALJ gave some weight to the opinion, actually imposing a lifting limitation that is more restrictive than what Dr. Bansal suggested. AR 158. The ALJ incorporated the remainder of Dr. Bansal's limitations except for the requirement that Peterson alter positions every 5 to 15 minutes. *Id.* The ALJ found this restriction was not supported by the objective medical evidence and also noted that Dr. Bansal examined Peterson on only one occasion. *Id.* While it is true that Dr. Bansal examined Peterson only once, I find the ALJ improperly discounted his opinion.

The ALJ determined that Dr. Bansal based his opinion that Peterson would need to change positions frequently entirely on Peterson's subjective complaints. AR 158. I disagree, as this limitation is not inconsistent with the medical evidence of record. In May 2012, Dr. Woolhiser wrote that during a physical examination Peterson had to change positions frequently because of pain. AR 622. Physical therapist Gasner reported that Peterson was unable to complete any functional activities for more than 12 minutes due to back pain and estimated that Peterson could sit or stand for only 15 minutes at a time. AR 985, 989. Additionally, Dr. Hof's notes contain frequent references to Peterson's back pain. AR 627-28, 735-36, 916-17.

In short, and contrary to the ALJ's explanation, Dr. Bansal's conclusion that Peterson must change positions every 5 to 15 minutes is supported by the medical evidence of record and was not based solely on Peterson's own statements. The ALJ's rejection of that finding is not supported by substantial evidence. As such, remand is necessary with directions for the ALJ to reconsider her evaluation of Dr. Bansal's opinion and to either (a) incorporate his finding as to Peterson's need for frequent changes of position into the RFC or (b) provide a more-detailed explanation, with citations to specific portions of the record, for her decision to reject that finding.

### b.    *Did the ALJ properly evaluate the other source evidence?*

Peterson also argues that the ALJ failed to give proper weight to the opinions of physical therapists Marlon Gasner and Christine Feltman.  The ALJ noted that Gasner's functional capacity assessment included findings that Peterson could sit and stand for 15 minute intervals, walk for 10 minutes, drive for 30 minutes and lift 15 pounds.  AR 158, 985.  The ALJ also noted Gasner's finding that Peterson could perform at the light physical demand level.  AR 158, 983.  The ALJ gave some weight to Gasner's opinion and agreed that Peterson's "work should be restricted somewhat."  AR 158.

As for Feltman, the ALJ noted her statement that Peterson was "currently unable to work."  AR 158, 980.  The ALJ questioned whether this constituted an opinion that Peterson was unable to work or, instead, simply reiterated Peterson's own claim of such inability.  AR 158.  To the extent the statement amounted to an opinion that Peterson could not work, the ALJ discounted it on grounds that it was not accompanied by any specific findings of work-related limitations.  *Id.*

As noted above, the ALJ has more discretion in determining what weight to give to "other medical evidence."  *Raney*, 396 F.3d at 1010.  The ALJ is required to explain the "weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  SSR 06-3p.  Here, I find that the ALJ fulfilled this obligation.  While a more-expansive explanation could have been provided, the ALJ considered the physical therapists' opinions and provided sufficient information such that I am able to "follow [her] reasoning."  I find no error as to the ALJ's assessment of Gasner's and Feltman's opinions.

## B.     The RFC Determination

Peterson contends that the ALJ's RFC finding that he can sit or stand for at least 30 minutes at a time is not based on substantial evidence because no treating or examining source made such a finding.  The Commissioner disagrees.

### 1.     Applicable Standards

The claimant's RFC is "what [the claimant] can still do" despite his or her physical or mental "limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  "The ALJ must determine a claimant's RFC based on all of the relevant evidence." *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004).  This includes "an individual's own description of [his] limitations." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  The claimant's RFC "is a medical question," *Lauer*, 245 F.3d at 704, and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam).  The medical evidence should address the claimant's "ability to function in the workplace." *Lewis*, 353 F.3d at 646.  The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011).  Furthermore, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).  "[T]he ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995).  The RFC must only include those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004).

An ALJ has an independent duty to fully and fairly develop the record. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Smith v. Barnhart*, 435 F.3d 926, 930 (8th

Cir. 2006) (noting that the non-adversarial nature of administrative hearings make it incumbent upon the ALJ to fully and fairly develop the record.). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted). The ALJ must be able to rely on some medical evidence that describes the claimant's "functional limitations with sufficient generalized clarity to allow for understanding of how those limitations function in a work environment." *Cox*, 495 F.3d at 620 n.6. If the medical evidence on the record is sufficient to make a disability determination, the ALJ need not order additional medical examinations to develop the record further. *See Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013).

Although the RFC assessment is based on medical evidence, it is ultimately an administrative decision reserved to the Commissioner. *See Cox*, 495 F.3d at 619-20 (8th Cir. 2007). Thus, "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Agan v. Astrue*, 922 F. Supp. 2d 730, 755 (N.D. Iowa 2013) (quoting *Naber*, 22 F.3d at 189); *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) ("The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."). The ALJ does not have to "seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo*, 377 F.3d at 806.

### 2. Analysis

As discussed in Section V(A)(6)(a), *supra*, the ALJ improperly discredited Dr. Bansal's opinion that Peterson would need to alter positions every 5 to 15 minutes. AR 158. That error directly impacts the ALJ's finding that Peterson can sit or stand for 30

minutes at a time.  As such, on remand the ALJ must reconsider this aspect of Peterson's RFC after correctly evaluating Dr. Bansal's opinion.

In addition, and based on my review of the entire record, I agree with Peterson that no medical evidence supports the ALJ's finding that Peterson can sit for 30 minutes at a time.  Indeed, no medical source or other source provided an opinion that Peterson can sit or stand for more than 15 minutes at once.  Dr. Woolhiser noted that Peterson could not sit for very long and was frequently changing positions because of the pain. AR 693.  Dr. Bansal opined that Peterson could sit for approximately 10-15 minutes before burning pain will cause him to have to change positions.  AR 1021.  Physical therapist Gasner estimated that Peterson could only sit for 15 minutes at a time.  AR 986.

An ALJ is not allowed to form his or her own medical opinions when assessing a claimant's RFC.  *See Pate–Fires v. Astrue*, 564 F.3d 935, 946–47 (8th Cir. 2009) (ALJs may not "play doctor").  Here, in addition to improperly discrediting Dr. Bansal's opinion, the ALJ appeared to pluck the 30-minute sitting or standing limitation out of thin air.  On remand, the ALJ shall revisit this aspect of Peterson's RFC and obtain any additional medical evidence that may be necessary to fully-develop the issue of Peterson's sitting or standing limitation.

## C.    *Subjective Allegations*

Finally, Peterson contends that the ALJ failed to provide good reasons for discrediting his subjective allegations.  Because I have determined that remand is necessary, I will direct that the ALJ reconsider Peterson's credibility, as well.  If, for example, the ALJ determines that Peterson is able to sit for only 15 minutes at a time, such a finding may tend to make his subjective allegations more credible.  Thus, the ALJ's decision on remand shall specifically address Peterson's credibility and provide reasons for the ALJ's credibility findings.

## VI.    CONCLUSION

For the reasons set forth herein, the Commissioner's determination that Peterson was not disabled is **reversed and remanded** for further proceedings consistent with this order.  Judgment shall enter in favor of Peterson and against the Commissioner.

On remand, the ALJ must (1) reevaluate Dr. Bansal's opinion and provide good reasons for the weight afforded to that opinion, (2) reconsider the sitting and standing limitations set forth in the RFC and provide detailed explanations for those limitations and (3) reassess Peterson's credibility and provide good reasons for the resulting credibility determination.

**IT IS SO ORDERED.**

**DATED** this 21st day of April, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE